**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | |
|---|---|
| **CURTIS McNEIL,**          ) | |
|                      ) | |
|        **Plaintiff,**      ) | |
|                      ) | |
| **v.**                      ) | **No. 10-2411-STA** |
|                      ) | |
| **SONOCO PRODUCTS COMPANY,**   ) | |
|                      ) | |
|        **Defendant.**     ) | |

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant Sonoco Products Company's Motion for Summary Judgment (D.E. # 18) filed on December 2, 2011. Plaintiff Curtis McNeil has filed a response in opposition (D.E. # 22), and Defendant has filed a reply brief (D.E. #23). For the reasons set forth below, Defendant's Motion is **GRANTED**.

### BACKGROUND

The following facts are not in dispute for purposes of this Motion.[1] On April 23, 1990, Sonoco hired Plaintiff, Curtis McNeil, ("Plaintiff") as a full time employee at its facility on President's Island in Memphis, Tennessee. (McNeil Dep. 26:8–9, 44:2–6, Oct. 10, 2011.) Initially, Plaintiff worked on a press machine in Defendant's ultra seal department. (Benton Dep. 9:11–15,

---

[1] Plaintiff has not filed a proper response to Defendant's statement of undisputed facts. Local Rule 56.1(d) states that "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment." Therefore, the Court deems Defendant's version of the facts to be undisputed at this stage of the proceedings. The Court will discuss the deficiency in Plaintiff's response in greater detail below.

Oct. 11, 2011.)  One of the products that Defendant manufactures at the President's Island facility is the metal lid used for cans of shortening. (McNeil Dep. 131:24–132:6.)  Plaintiff eventually became a bernal operator in the ultra seal department and was responsible for operating Defendant's bernal machine, which is used in the manufacturing of the metal lids for the shortening cans. (Benton Dep. 9:16–22.)

For at least the last five years of Plaintiff's employment, Plaintiff reported to Jerry Benton ("Benton"). (McNeil Dep. 45:2–6.)  Benton is an African-American male who is fifty-eight years old. (*Id.* at 46:6–9; Benton Dep. 12:22–3:3.)  Benton's supervisor at Sonoco is Department Manager John Logan ("Logan").  (McNeil 46:10–16; Benton Dep. 22:11–24.)  Logan is an African-American male who is fifty-five years of age.  (McNeil Dep. 46:25–47:3; Harris Decl. ¶ 5.)  Logan reports to Plant Manager Nicholas Harris who is a caucasian male age thirty-eight.  (McNeil Dep. 46:17–24; Harris Decl. ¶ 2.)

**Plaintiff's Shoulder Injury**

According to Plaintiff, in either 2000 or 2002, Plaintiff experienced a workplace injury to his right shoulder when a machine malfunctioned and caused Plaintiff to collide with a steel beam. (McNeil Dep. 38:7–39:9, 81:25–82:4.)  Because of this injury, Plaintiff's doctor ordered him to take a leave of absence from work for three to six months, which Defendant granted.  (*Id.* at 39:10–40:14.)  When Plaintiff returned from his leave of absence, Plaintiff had no medical restrictions.  (*Id.* at 41:19–42:8.)  Plaintiff believes that in the years since his shoulder injury, Defendant wanted to terminate his employment.  (*Id.* at 40:19–25, 214:2–9.)

**Plaintiff's Skin Condition**

The metal ends that Defendant manufactures at its President's Island facility are used in the

packaging of a consumer food product. (*Id.* at 131:10–132:13.)  In order to protect the food product from unwanted hairs and other matter, Defendant requires that all of its bernal operators wear hair and beard nets. (*Id.* at 131:10–132:13; Harris Decl. ¶ 7.)  On September 29, 2006, Plaintiff's physician, Dr. Barbara Geater, informed Defendant that Plaintiff could not wear the beard net because Plaintiff has a skin condition called folliculitis, and the beard net would irritate his facial skin. (McNeil Dep. 132:18–133:16, Ex. 33.)  Because Defendant requires all bernal operators to utilize the beard net to protect its product from hair particles, Harris the plant manager looked for alternative protective gear for Plaintiff that would not irritate his skin condition. (Harris Decl. ¶ 8.) Harris found a round, one-piece, screen-wire veil similar to a beekeeper's head cover that he believed would provide the necessary protection and would allow Plaintiff to effectively perform his job responsibilities. (Harris Decl. ¶ 9; McNeil Dep. 139:4–140:21, Ex. 36.)  On October 5, 2006, Defendant sent a letter to Dr. Geater asking if Plaintiff could wear the round, one-piece, screen-wire veil in lieu of the beard net. (Harris Decl. ¶ 10; McNeil Dep. 141:2–10, Ex. 34.)  Dr. Geater informed Defendant that Plaintiff could wear the round, one-piece, screen-wire veil. (Harris Decl. ¶ 11.)

After Defendant received approval from Dr. Geater for Plaintiff to wear the veil, Plaintiff wore the veil for approximately four hours on one day and then left work because he said that it was bothering him. (McNeil Dep. 142:3–143:8.)  On October 9, 2006, Plaintiff returned to work with a letter from Dr. Geater that stated, "Mr. McNeil is able to wear a beard net.  He is able to return to work full duty." (*Id.* at 143:13–144:25, Ex. 35.)  After presenting Dr. Geater's note to Defendant on October 9, 2006, Plaintiff wore the beard net every shift and used a facial cream prescribed by Dr. Geater. (*Id.* at 145:5–13.)  According to Plaintiff, the beard net never bothered him again. (*Id.*)

In his pleadings, Plaintiff asserts his belief that he was terminated over two years later in part for complaining about the one-piece, screen-wire veil. (Compl. ¶ 10.)

**Plaintiff's Attendance Record**

During Plaintiff's employment with Defendant, Plaintiff had almost constant absenteeism issues. (Benton Dep. 17:1–3.) Plaintiff had ongoing problems with absenteeism and tardiness even though Plaintiff received a copy of Defendant's attendance policy at the beginning of each year. (McNeil Dep. 48:10–15.) Defendant's attendance policy was also posted on a bulletin board in the facility's lobby. (*Id.* at 48:21-49:8.) Specifically, Defendant's attendance policy states that "[i]t is essential to have a dependable work force in order to meet customer requirements and protect the safety and welfare of our overall employee group. Regular attendance during scheduled hours of work, reporting for work on time and continuing to work to the end of the scheduled period are essential functions of every job." (*Id.* at 49:9–14, Ex. 3.) To administer its attendance policy, Defendant uses an occurrence system to determine the appropriate action to be taken with an employee for being absent from work, reporting late or leaving early. (*Id.*) An "occurrence" is defined as any day on which an employee misses all or part of a scheduled work shift. (*Id.*) If an employee misses less than half of a scheduled shift for a reason not excluded by the attendance policy, the employee receives a half-occurrence. (*Id.*) On the other hand, if an employee misses more than half of a scheduled shift for a reason that is not excluded by the attendance policy, the employee receives a full occurrence. (*Id.*)

Under Defendant's attendance policy, an employee receives (a) a verbal warning after three occurrences within a twelve-month rolling period, (b) a written warning after four occurrences within a twelve-month rolling period, (c) a five-day unpaid suspension after five occurrences within a

twelve-month rolling period, (d) a second five-day suspension after six occurrences within a twelve-month rolling period, and (e) termination after accumulating seven or more occurrences within a twelve-month rolling period.  (*Id.*)

During Plaintiff's employment, he received thirteen verbal warnings, thirteen written warnings and four one week unpaid suspensions – all of which resulted from his violations of Defendant's attendance policy.  (Harris Decl. ¶ 12; McNeil Dep., Ex. 7, 8, 10, 11, 12, 13, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 37, 39, 40, 42, 43, 44, 46.)  On September 14, 2008, Plaintiff was issued an occurrence for an incident which he cannot recall.  (McNeil Dep. 165:14–19, Ex. 46, Harris Decl. ¶ 13.)  This occurrence brought Plaintiff's count to 5.5 occurrences within the twelve-month rolling period.  (*Id.*)  As a result, Plaintiff was suspended without pay from October 6 through October 10, 2008.  (*Id.*)

Defendant's attendance policy also provides that in addition to any action taken under the occurrence system, an employee with consistent absenteeism or other disciplinary issues may be subject to further disciplinary action including termination.  (*Id.* at 49:9–14, Ex. 3.)  Accordingly, on October 29, 2008, Plaintiff was placed on probation for six months because of his excessive and unexcused absenteeism and repeated disciplinary warnings about attendance.  (Harris Decl. ¶ 14, McNeil Dep., Ex. 46.)  This meant that during Plaintiff's probationary period, any absence over the next six months which was not specifically allowed under the attendance policy would result in immediate termination of Plaintiff's employment.  (*Id.*)

**Plaintiff's Jury Duty**

In October 2008, Plaintiff received a federal jury duty summons.  (McNeil Dep. 177:4–14.)  After receiving and reading the summons, Plaintiff gave it to Benton his supervisor and informed

5

Benton that he had jury duty during the month of December 2008. (*Id.* at 177:17–21.) Defendant has a jury duty policy that grants employees time off for jury duty and provides supplementary compensation for employees who are unable to work during their jury duty. (*Id.* at 179:25–180:4, Ex. 50.) In order to be eligible for the supplementary compensation, an employee serving on jury duty "must secure a signed verification of hours and days served as a juror from a court official." (*Id.*) Sonoco employees who cannot be present at work due to serving jury duty are not charged an occurrence pursuant to the attendance policy. (*Id.* at 49:9-14, Ex. 3.) For example, in 1993, Plaintiff had also been summoned for jury duty in Tennessee state court. (*Id.* at 178:15–180:19.) In that instance Plaintiff had to personally appear every morning at the state courthouse. (*Id.*) Pursuant to Sonoco's jury duty policy, Plaintiff was paid for every day that he served his jury duty in 1993. (*Id.*)

With respect to his 2008 federal jury duty summons, Plaintiff understood that he had to call in every night after 5:00 p.m. to see if he had to be present at the federal courthouse the following day. (*Id.* at 180:20–181:2.) Because individuals serving federal jury duty call a phone number to determine if they have to appear for jury duty the next morning, Defendant expects that if an employee is not required to report for federal jury duty, he/she will be present for his/her scheduled shift. (Harris Dep. 8:7-14, Oct. 11, 2011.) At the same time, Defendant did not expect employees like Plaintiff who worked the night shift to be present at work if he had jury duty either the same day as his shift or the morning after his shift. (Harris Decl. ¶ 15.)

Plaintiff was scheduled to work on December 1, 2008, at 7:00 p.m. (McNeil Dep. 182:24–183:8.) On Friday, November 28, 2008, Plaintiff called the federal jury duty phone number and learned that he did not have to appear for jury duty on Monday, December 1, 2008. (*Id.* at 181:25–182:12.) On the evening of December 1, 2008, Plaintiff again called the federal jury duty

number to see if he had to report for duty on Tuesday, December 2.  (*Id.* at 183:9-18.)  Plaintiff heard

the same message that he had heard on November 28. (*Id.*)  At approximately 11:45 p.m. on the night

of December 1 and after Plaintiff's shift had already started, the updated message for the jury hotline

informed Plaintiff that he did not have to appear for jury duty the following day. (*Id.* at 186:20-

187:4.)  Plaintiff did not report to work at any time during his scheduled shift on December 1, 2008.

(Harris Decl. ¶ 16.)

Plaintiff was next scheduled to work on December 2, 2008, at 7:00 p.m. (McNeil Dep.

188:2–4.)  At 5:00 p.m. on December 2, Plaintiff called the jury hotline and was informed that he

did not have to serve on December 3.  (*Id.* at 188:5–11.)  Although Plaintiff could have arrived to

work at the start of his scheduled shift, Plaintiff did not report to work on December 2, 2008.  (*Id.*

at 188:5–15.)  Plaintiff's next scheduled shift was on the night of Friday, December 5, 2008 at 7:00

p.m.  (*Id.* at 189:22–190:3.)  On Thursday, December 4, 2008, the jury hotline informed Plaintiff that

he did not have to report for jury duty on December 5, 2008.  (*Id.* at 190:21–191:1.)  Even though

Plaintiff would not be required to report for jury duty on Friday or during the weekend, Plaintiff

again did not show up for his shift on the evening of Friday, December 5, 2008.  (*Id.* at

190:21–191:8.)  In fact, for his entire month of jury service in December 2008, Plaintiff never had

to appear at the federal courthouse and never served one day of jury duty.  (*Id.* at 194:7-14.)

**Plaintiff's Termination**

When Plaintiff did not show up for his scheduled shifts, Defendant's management believed

that Plaintiff had been required to report for jury duty.  (Harris Decl. ¶ 17.)  On December 10, 2008,

Plaintiff came to the facility and asked Benton his supervisor for his paycheck from the previous

week.  (Benton Decl. ¶ 5.) Because Plaintiff had not worked the previous week and had not provided

the necessary documentation verifying that he had served jury duty, Benton advised Plaintiff that Defendant had no paycheck for him for that week. (*Id.*)

On the night of December 11, 2008, Plaintiff reported to work his shift. (*Id.* ¶ 6.) During his shift, Benton asked Plaintiff if he had the signed verification showing that he had served jury duty during the days he was absent from work. (*Id.*) Plaintiff responded that he had never had to appear for jury duty. (*Id.*) Plaintiff attempted to excuse his absences by stating that he was required to call the jury duty hotline after his shift had already begun. (*Id.*)

On December 17, 2011, Harris the plant manager and Logan the department manager met with Plaintiff to talk about Plaintiff's jury duty and his absences. (Harris Decl. ¶ 18.) During this meeting, Plaintiff admitted to Harris and Logan that he had never actually served one day of jury duty and was never required to appear at the federal courthouse. (*Id.*) Plaintiff had effectively missed multiple days of work and allowed Defendant to believe that he had been serving jury duty the entire time. (*Id.* ¶ 19.) The absences Plaintiff incurred were a direct violation of Plaintiff's probation, which specifically stated that any absence that was not excluded under the attendance policy would result in the immediate termination of Plaintiff's employment. (*Id.*; McNeil Dep., Ex. 46.) On December 22, 2008, Plaintiff met with Harris and the production manager Mike Cowan, who terminated Plaintiff's employment because Plaintiff had violated his attendance probation. (McNeil Dep. 201:3–202:11; Harris Dep. 9:2–8; Benton Dep. 23:2–7.)

At the time of Plaintiff's termination, Defendant's production had slowed to a point where it did not require a replacement for Plaintiff. (Harris Decl. ¶ 20.) An internal employee, Yvette Franklin, who is African-American and is 49 years old, eventually replaced Plaintiff on July 19, 2010. (*Id.*)

In its Motion for Summary Judgment, Defendant argues that Plaintiff cannot prove his various claims of discrimination and so Defendant is entitled to judgment as a matter of law. Plaintiff has alleged that Defendant discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). Defendant contends that fatal to Plaintiff's race and age discrimination claims is his lack of proof that he was qualified for his position or that he was treated differently than a similarly situated non-protected employee or replaced by someone outside of his protected class. Even if Plaintiff could make out his prima facie race and age claims, Defendant has come forward with a legitimate, nondiscriminatory reason for Plaintiff's termination, namely, his excessive absences. As for the disability claim, Defendant asserts that there is no evidence that Defendant perceived Plaintiff as disabled or discharged him on the basis of a perceived disability. Finally, there is no proof that Defendant retaliated against Plaintiff under the ADA. Plaintiff has failed to adduce any evidence that he engaged in some form of protected activity under the ADA much less that Defendant knew about it. Therefore, Defendant seeks summary judgment as to all of Plaintiff's claims.

In his one-page response brief in opposition to the Motion for Summary Judgment, Plaintiff argues that Defendant's proffered reason for his termination, his absences from work during federal jury duty, is pretextual. Plaintiff argues without elaboration that Defendant's Motion does not correctly state the relevant facts or the dates of certain events. Plaintiff further states that "his supervisors afforded him time off for his Federal jury duty and he should not have been discharged." Pl.'s Resp. 1. Plaintiff also argues that there is evidence of Defendant scrutinizing the attendance of its African-American employees more closely than it did for other employees. Plaintiff concludes

by asserting that he "has stated a basic claim under his complaint and pursuant to Title VII that merits trial upon the allegations which he has made." *Id.* Plaintiff's response includes his seven-page affidavit containing statements the Court will consider in closer detail below.

In its reply, Defendant argues that Plaintiff has not properly responded to Defendant's statements of undisputed facts. As such, Defendant asks the Court to assume that its asserted facts are admitted. According to Defendant, even if the Court reached the substance of Plaintiff's summary judgment affidavit, Plaintiff has failed to adduce any evidence in support of his prima facie case of race discrimination. Defendant also highlights that Plaintiff has not briefed the ADEA or ADA whatsoever. Under the circumstances, Defendant asks the Court to find that Plaintiff has abandoned those claims. Therefore, Defendant asks the Court to enter summary judgment in its favor.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving part "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[3] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

trial."[4]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[5]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[9]  Finally, the "judge may not make credibility determinations or weigh the evidence."[10]  Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[11]

## ANALYSIS

---

[4] *Celotex*, 477 U.S. at 324.

[5] *Matsushita*, 475 U.S. at 586.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id*. at 251-52.

[8] *Celotex*, 477 U.S. at 322.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[11] Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322.

## I. Plaintiff's Response in Opposition and Summary Judgment Affidavit

As an initial matter, the Court must evaluate which facts are truly not in dispute for purposes of this Motion. In his response, Plaintiff has failed to respond in the proper way to Defendant's asserted statements of undisputed facts. Local Rule 56.1(b) provides

> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> (1) agreeing that the fact is undisputed;
> (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
> (3) demonstrating that the fact is disputed.
>
> Each disputed fact must be supported by specific citation to the record. Such response shall be filed with any memorandum in response to the motion. The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the nonmovant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant..[12]

The Court finds that Plaintiff has failed to comply with the Local Rules and adequately dispute the material facts upon which Defendant has relied. Plaintiff has not responded to Defendant's statement of facts to agree with them or deny them, has not reproduced the facts using Defendant's corresponding numbering, and has not cited to the record for the purpose of showing that the fact is disputed. Pursuant to Local Rule 56.1(d), Plaintiff's "[f]ailure to respond to a moving party's statement of material facts" indicates to the Court that "the asserted facts are not disputed for purposes of summary judgment."[13] Therefore, the Court deems Defendant's version of the facts to

---

[12] Local Rule 56.1(b).

[13] Local Rule 56.1(d). *See also* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion.")

be undisputed at this stage of the proceedings.

Instead of preparing a proper response to Defendant's statement of facts, Plaintiff has elected to rely on the "basic claim under his complaint" and "upon the allegations he has made."[14] At the summary judgment stage, Plaintiff is not permitted to simply rely on his pleadings but has the burden to present "specific facts showing that there is a genuine issue for trial."[15] Based on the number of evidentiary depositions Defendant has attached to its Motion, it is clear that the parties had an ample opportunity to conduct discovery. Thus, the bare allegations of Plaintiff's Complaint, unless undisputed, do not suffice.

Plaintiff has also filed a summary judgment affidavit in which Plaintiff avers that his supervisor Jerry Benton told Plaintiff he "would not be calendared to appear on any shift" while he had federal jury duty in the month of December 2008."[16] Plaintiff goes on to state that "[w]hen I did not show up for my shifts in December 2008 it was because Jerry Benton, for the Defendant, had not scheduled me to report to work and Mr. Benton had expressly told me not return to work until my jury duty had been completed."[17] At the same time, the affidavit states that after Plaintiff worked his full shift on Wednesday, December 3, 2008, Benton told Plaintiff that he was not to report to work again, making December 3, 2008, the last day Plaintiff worked for Defendant.[18] In contrast, during his deposition Plaintiff testified that Defendant was aware of Plaintiff's summons for jury

---

[14] Pl.'s Resp. 1.

[15] *Celotex*, 477 U.S. at 324.

[16] McNeil Aff. ¶ 4.

[17] *Id.* ¶ 5.

[18] *Id.* ¶ 6.

duty to begin December 1, 2008. Plaintiff further testified that Defendant nevertheless scheduled him to work during the first week of December, including Monday, December 1, 2008;[19] Tuesday, December 2, 2008;[20] and Friday, December 5, 2008.[21] Plaintiff specifically testified that he was not scheduled to work on Wednesday or Thursday of that week.[22]

A party cannot create a genuine issue of material fact for purposes of summary judgment by presenting an affidavit that contradicts deposition testimony.[23] Accordingly, a plaintiff cannot create a factual issue by contradicting testimony given in his deposition.[24] This rule is "grounded on the sound proposition that a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists."[25] Statements which a plaintiff has knowledge of must be made in the plaintiff's deposition, when questioned on the subject; thus, if a specific statement was made in a conversation that the deponent was questioned on, the deponent "was required to bring it out at the deposition and could not contradict [his] deposition testimony in a subsequent affidavit."[26] Conversely, an affidavit may be used to provide information that the questioner failed to inquire about; thus, it has been allowed where "[the

---

[19] McNeil Dep. 182:24–183:4; 186:1

[20] *Id.* at 186:1–5; 188:2–4.

[21] *Id.* at 189:15–190:3; 191:2:8.

[22] *Id.* at 189:15–25.

[23] *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

[24] *Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003).

[25] *Aerel v. PCC Airfoils*, 448 F.3d 899, 907 (6th Cir. 2006).

[26] *Reid*, 790 F.3d at 459.

deponent] was not expressly asked what [a named individual] said to [the deponent] during that conversation."[27] A reviewing court must first determine whether a post-deposition affidavit submitted at the summary judgment stage directly contradicts the non-moving party's prior sworn testimony; if so, the affidavit should be stricken.[28]

The Court finds that Plaintiff's summary judgment affidavit contradicts or improperly elaborates on his previous deposition testimony in several respects. First, the affidavit states that Plaintiff did not report to work for shifts during December 2008 because he was told he would not be scheduled to work at all until his jury duty was complete. Plaintiff also avers that Defendant did not, in fact, schedule him to work any shifts during his jury service, which began on December 1, 2008. In his deposition, however, Plaintiff admitted that Defendant was aware of his summons to jury duty and scheduled him to work on Monday, December 1 (the first day of his jury service); Tuesday, December 2; and Friday, December 3. Nowhere in Plaintiff's affidavit or in his deposition is this inconsistency explained. Second, Plaintiff's affidavit states that he did actually work a shift on Wednesday, December 3, at which time he was told to go home and not return to work until further notice. Plaintiff avers that this was the last day he worked for Defendant.[29] And yet in his deposition, Plaintiff testified that he was not even scheduled to work on Wednesday, December 3,

_____

[27] *Briggs v. Potter*, 463 F.3d 507, 513–14 (6th Cir. 2006).

[28] *Aerel*, 448 F.3d at 908.

[29] The Court also notes that Plaintiff was directly asked about this during his deposition and could not remember the date. Plaintiff testified that he worked one final shift sometime before December 22, 2008, and at the end of the shift was told not to come back until further notice. McNeil Dep. 201:5–19. Plaintiff was specifically asked when this occurred but responded that he was not sure of the exact date. *Id.* Now in his summary judgment affidavit, Plaintiff places this last shift on Wednesday, December 3, but fails to explain how he can now give the right date.

and admitted that he did not work any shifts the week of December 1 through 5.

Based on these contradictions, the Court holds that Plaintiff's affidavit in support of this Motion conflicts or improperly expounds on his deposition testimony, and so the affidavit should be disregarded. The rule is clear that where a nonmoving party attempts to offer an affidavit that contradicts other statements made by the party during a deposition, then the Court must disregard the affidavit. Plaintiff has offered no explanation for the inconsistencies between the affidavit and deposition testimony. Therefore, the Court declines to consider the summary judgment affidavit.

## II. Plaintiff's Unsupported Claims

In its reply Defendant notes that Plaintiff has failed to respond to Defendant's arguments as to several of Plaintiff's claims including his claim for age discrimination under the ADEA or disability discrimination or retaliation under the ADA. Defendant's memorandum briefs the relevant legal standard for claims under the ADEA and the ADA and seeks judgment as a matter of law as to Plaintiff's claims brought pursuant to these acts. District courts in this Circuit routinely grant summary judgment as to claims a plaintiff fails to support or address in a response to a motion for summary judgment.[30] In his response in opposition to Defendant's Motion for Summary Judgment, Plaintiff refers specifically only to Title VII and the absences that led to the termination of his

---

[30] *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 809 (M.D. Tenn. 2011); *Anglers of the Au Sable v. U.S. Forest Serv.,* 565 F. Supp. 2d 812, 839 (E.D. Mich.2008)*; Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999). *See also Clark v. City of Dublin,* No. 05-3186, 2006 WL 1133577, at *3 (6th Cir. Apr. 27, 2006) (where the appellant did not properly respond to the arguments asserted against his ADEA and ADA claims by the appellees in their motion for summary judgment, the appellant had abandoned his ADEA and ADA claims); *Conner v. Hardee's Food Sys.,* No. 01-5679, 2003 WL 932432, at *4 (6th Cir. Mar. 6, 2003) (finding that, "Because Plaintiffs failed to brief the issue before the district court . . . Plaintiffs abandoned their . . . claim."); *Hazelwood v. Tenn. Dept. of Safety*, No. 3:05-cv-356, 2008 WL 3200720, at *8 (E.D. Tenn. Aug. 5, 2008).

employment. The one-page brief does not mention discrimination owing to Plaintiff's age or disability much less cite legal authority or evidence in the record to show why genuine factual disputes remain as to these claims. As a result the Court finds that Plaintiff has abandoned these unsupported claims. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims under the ADEA and the ADA.

## III. Race Discrimination

Plaintiff's remaining cause of action is his theory that Defendant discriminated against him on the basis of his race by terminating his employment. In his response brief, Plaintiff contends that Defendant applied its attendance policies differently to African-American employees like Plaintiff than it did with non-protected employees. Title VII makes it an unlawful employment practice "to. . . discharge any individual . . . because of such individual's race [or] color. . . ."[31] Where as here a plaintiff offers only circumstantial evidence of unlawful discrimination, the Court analyzes the case using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[32] Plaintiff bears the initial burden to establish his prima facie case of discrimination by showing that (1) he is a member of a protected group, (2) he was subject to an adverse employment decision, (3) he was qualified for the position, and (4) he was either replaced by a person outside of the protected class or was treated differently than similarly situated non-protected employees.[33]

The Court holds that Plaintiff cannot prove all of the elements of his prima facie case and accordingly Defendant is entitled to summary judgment on Plaintiff's claim of race discrimination.

---

[31] 42 U.S.C. § 2000e-2(a)(1).

[32] *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

[33] *Russell v. Univ. of Toledo,* 537 F.3d 596, 604 (6th Cir. 2008).

In the case at bar, the parties do not dispute that Plaintiff is a member of a protected group, that is, he is an African-American, and that Plaintiff suffered an adverse employment decision. Thus, Plaintiff can prove the first two elements of his prima facie case. Defendant argues that Plaintiff was no longer qualified for his position based on his excessive absences and in particular Plaintiff's absences while on probation for missing work. It is undisputed in this case that Plaintiff was on probation for excessive absenteeism at the time of his termination and that under the terms of the probation any unexcused absence would result in Plaintiff's immediate dismissal. It is further undisputed that Plaintiff missed shifts for which he was scheduled during the week of December 1 through 5. Under the circumstances Defendant concluded that Plaintiff was in violation of the terms of his probation and made the decision to terminate Plaintiff's employment.

For purposes of its analysis on this element, the Court finds that questions of fact about Plaintiff's absences remain. A reasonable juror could find that Plaintiff was not at fault for his absence from work on Monday, December 1, 2008. There is evidence in the record that Plaintiff's regular shifts began at 7:00 p.m. and that Defendant did not expect Plaintiff to work his shift on days when he had jury service. For example, if Plaintiff had to report for jury duty on Monday, Defendant did not require Plaintiff to come to work Monday evening. Likewise, if Plaintiff had jury duty on Tuesday, Defendant did not require him to work the Monday evening before his jury duty or the Tuesday evening after. Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that for the shift on Monday, December 1, 2008, Plaintiff was unable to work his shift through no fault of his own. Plaintiff did not learn until late in the evening that he would not be required to report for jury duty on the following day. There is also evidence that Defendant had already called in another employee to work Plaintiff's shift. Because Defendant did not expect

Plaintiff to work over night Monday and then report for federal jury duty early in the day on Tuesday, Plaintiff arguably was not at fault for not being at work on Monday, December 1, 2008.

The fact remains that Plaintiff has not shown why his absences on Tuesday, December 2, 2008, or on Friday, December 5, 2008, were excusable. The evidence shows that Plaintiff was scheduled to be at work at 7:00 p.m. on Tuesday, December 2, and that Plaintiff did not have any jury duty on that day. Moreover, Plaintiff knew as early as 5:00 p.m. on Tuesday that he was not required to report for jury service on Wednesday. Plaintiff has not demonstrated why he could not work his shift on Tuesday, December 5, 2008. Likewise, Plaintiff has not shown why he was unable to work his scheduled shift on Friday, December 5. The evidence shows that Plaintiff was off work Wednesday and Thursday and that Plaintiff did not have jury duty on those days or on Friday, December 5. Even so, Plaintiff did not report to work for his normal shift on Friday. Moreover, on these days when Plaintiff did not report for work, management at the plant assumed that he was carrying out his jury service. Under the circumstances, Plaintiff arguably violated the terms of his probation by failing to report to work on Tuesday, December 2 and Friday, December 5, or notify his supervisor that he did not have jury duty and was available for work on those days.[34]

Whatever questions of fact remain about Plaintiff's absences, the Court finds that it need not decide whether Plaintiff can prove whether he remained qualified for his position. The Court holds that no reasonable juror could find that Plaintiff was replaced by a person outside of the protected class or was treated differently than similarly situated non-protected employees. Plaintiff has failed to identify the person who replaced him, and Defendant has adduced undisputed evidence that

---

[34] Although it appears that Plaintiff was scheduled for other days in December 2008 and Plaintiff was eventually told not to return to work, the parties have not produced evidence of the dates of those other shifts and which ones he missed.

Plaintiff was eventually replaced by an employee who like Plaintiff is African-American. Plaintiff is left then to show that he was treated differently than similarly-situated non-protected employees.

To satisfy the similarly situated requirement, a plaintiff must show that a comparable employee is similar in all of the relevant aspects.[35] While the precise aspects of employment that are relevant to determining whether the similarly situated requirement has been satisfied depend on the facts and circumstances of each case, the Sixth Circuit has generally focused on whether the plaintiff and the comparable employee: (1) share the same supervisor; (2) are subject to the same standards; and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them.[36] The Sixth Circuit has elaborated that to be similarly situated, a comparator must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish his conduct or his employer's treatment of them for it.[37]

Here, the Court holds that Plaintiff has failed to proffer any evidence that a similarly situated employee outside of his protected class was treated more favorably. Plaintiff has not identified any specific comparator employee who engaged in the same general type of conduct as Plaintiff, i.e. excessive absenteeism, and yet was treated more favorably by Defendant. Nor has Plaintiff identified any similarly situated employee who was terminated specifically for missing shifts while being under summons for federal jury duty. Plaintiff argues in his response that "African-American

---

[35] *Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 480 (6th Cir. 2008). *See also Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998).

[36] *Barry*, 276 F. App'x at 480–81. (internal citations omitted).

[37] *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

employees were subject to greater scrutiny as to absences, clocking in, and as to discipline." Other than this statement in his brief, Plaintiff has not produced any specific evidence to support this allegation. In the absence of some proof that Defendant treated similarly situated employees who were not in Plaintiff's protected class more favorably, Plaintiff cannot make out his prima facie case for disparate treatment. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to this issue.

Even if Plaintiff could make out his prima facie case, the Court would find that Defendant has met its burden of production to offer a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Defendant has adduced evidence that Plaintiff was on a six-month probation period for excessive absences. Plaintiff was warned that during the probationary period, termination would result from any absences not allowed under the attendance policy. Defendant has come forward with proof that it terminated Plaintiff when Plaintiff missed more than one shift in December 2008 at a time when Plaintiff was summoned for jury duty. An employee's excessive absences constitutes a legitimate, nondiscriminatory reason for dismissal.[38] Furthermore, Defendant believed that Plaintiff was absent from work because he actually had jury duty. On the other hand, viewing the facts surrounding the jury duty and Plaintiff's absences in the light most favorable to Plaintiff, a reasonable juror could conclude that there was some confusion about Plaintiff's jury service, for example, what Plaintiff was to do when he learned that he did not have duty the following day but his night shift had already begun. Apparently Defendant was not sure when Plaintiff would be available for work until just before Plaintiff's shift was to begin. Putting this issue aside, the undisputed evidence shows that Plaintiff did not report for shifts that he was scheduled and

---

[38] *Love v. Elec. Power Bd. of Chattanooga, EPB*, 392 F. App'x 405, 408 (6th Cir. 2010).

expected to work including his shift on Friday, December 5, 2008, when it was clear that jury duty would not prevent Plaintiff from being at work. As such the Court holds that Defendant has carried its burden to offer a legitimate reason for the adverse action it took against Plaintiff.

Assuming then Plaintiff could make out his prima facie case and that Defendant could offer a legitimate nondiscriminatory explanation for Plaintiff's termination, the burden would then shift to Plaintiff to show that Defendant's reason was pretext for discrimination.[39] Plaintiff must introduce evidence to create a genuine issue of material fact that (1) the defendant's stated reasons had no basis in fact, (2) the stated reasons were not the actual reasons, or (3) the stated reasons were insufficient to explain the defendant's actions.[40] What is more "[a] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."[41] Based on the record before the Court, Plaintiff has no proof that Defendant's stated reasons for his dismissal were pretextual. Therefore, Defendant would inevitably be entitled to judgment as a matter of law on this claim.

## CONCLUSION

The Court holds that Plaintiff cannot make out his prima facie case for his claim of race discrimination. Even if he could, Defendant has produced a legitimate reason for dismissing

---

[39] *Romans v. Mich. Dept. of Human Servs.*, — F.3d —, 2012 WL 488707, at * 10 (6th Cir. Feb. 16, 2012) (citing *Chen*, 580 F.3d at 400).

[40] *Id.*

[41] *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in original); *Edmond v. State of Tenn. Dept. of Probation & Parole,*386 F. App'x 507, 515 (6th Cir. 2010); *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 502 (6th Cir. 2007).

Plaintiff, and Plaintiff has failed to adduce any evidence that Defendant's reasons were pretextual.

Therefore, Defendant's Motion for Summary Judgment is **GRANTED** on this claim.  As for

Plaintiff's claims for age and disability discrimination, Plaintiff has failed to brief the claims or

otherwise show why summary judgment is not appropriate.  Therefore, Defendant's Motion is

**GRANTED** as to these claims.

       **IT IS SO ORDERED.**

                                    **s/ S. Thomas Anderson**
                                    S. THOMAS ANDERSON
                                    UNITED STATES DISTRICT JUDGE

                                    Date: March 27, 2012.